Mr. Justice Eakle
delivered the opinion of the court.
The plaintiff deposited a note, by the hands of Mr. Shannon, re. sident in Camden, in the branch bank at that place, for collection. One Goodman, álso resident there, was the maker. Black, the payee, had indorsed it to the plaintiff, who also indorsed it, when he sent it to the bank. He was the last indorser and owner. At maturity,' *83 the note being unpaid, the president called at Shannon’s, who was ab« sent from home; and the note was protested for non-payment by the bank notary; but no notice was given or sent to the indorser, Black, or to the plaintiff, “they not being residents of Camden, and having no agent there.” This action is brought by the plaintiff for the nonperformance of its undertaking by the bank, to collect the note for the plaintiff, and on non-payment, to give the necessary notice to charge the indorser, it being alleged, that for want of such notice, the indorser is discharged, and the plaintiff has lost his debt.
On the argument in this court, I was inclined to think, this action would not lie for the plaintiff against the bank, until he had failed in his suit against the indorser. But the other members of the court being of a different opinion, and no question being raised on that ground, by the counsel for the bank, the case will be considered and disposed of, without reference to it.
The exception mainly urged against the verdict is, that the bank was the agent of Shannon, the depositor, only, and not of the plaintiff ; that the bank having given notice of non-payment to him. performed all that it engaged to perform, and was not bound to give notice to the indorser or owner. It will, in the first place, be proper to inquire, who was the depositor. The protest, which is competent evidence as an admission against the bank, although not evidence for the bank, of the facts stated in it, expressly recognizes the plaintiff, as the depositor and owner of the note ; “ at the request of the president and directors of the Branch of the Bank of the Stute of South Carolina, at Camden, for William Thompson, I, Robert Mickle,” &c. The plaintiff was the last indorser, and of course, the money when received, if paid at all, would have been placed as a deposite to his credit, and he alone could have withdrawn the fund. These circumstances shew, that in fact, the plaintiff was himself the depositor ; and that the bank regarded him as the owner, and undertook the collection of the note, as his agent. The bank was, therefore, responsible to him, for the performance of this duty or engagement.
The extent of that engagement, and the manner in which it. was tobe performed, next became the subject of inquiry. And as these much depend on the benefit to be derived by the promiser, or the injury to be sustained by the other contracting party, it is material to inquire, whether there was any such consideration for this undertaking on the part of the bank. And it could not but excite some surprise, at this day, if it were seriously alleged, that a bank had undertaken to do an, act of this kind, from which it did not expect to de-lire a benefit; to collect and appropriate any stun of money for a *84 customer, on which it expected no commission, and no use cquiva* lent to a commission. The readiness with which banks engage in this business, is a proof that they do derive a benefit from it; and the benefit is proportioned' to the extent of it. The money received on notes lodged for collection, becomes a deposite, on which, as a portion of their active capital, banks derive an income, as it enables them to extend their issues ; and it is well known that deposites are always considered by the banks as a portion of their available means to meet emergencies. Tn a commercial community, where such depo-sites are numerous and extensive, they form an important item in the business transactions of banks, from which large sums are frequently accumulated ; and which may reasonably be expected to remain there, as a place of safety, until some exigency may require them to be withdrawn ; and which may, therefore, prudently be relied on as a permanent source of revenue. I apprehend, therefore, it will not be Seniedj that such deposites, in general, are highly benefit cial to a bank ; and that, for the purpose of this action, is enough; The money was not received on this note; no benefit was actually-derived. But this was only one out of many ; it was one small item in an extensive branch of business, from which the bank did derive a benefit; and it was the anticipation of that benefit, which induced the bank to Undertake the collection. And this forms, in the opinion of the court, a sufficient consideration. Smedes vs. the Bank of Utica, 20 John. Rep. 372; where several of the questions involved in this case, are ably discussed, and decided as they are now by this court.
What then was the extent of the engagement ? The bank received the note as indorsee, to entitle it to demand the money. The plaintiff, had he retained the note, it may be assumed, would have known what was necessary to charge the indorser, and would not have neglected it. The defendant, for valuable consideration, took the note out of his hands, in the character of indorsee, for the purpose of col -' lection ; not merely for the purpose of demanding payment of the maker, at maturity ; for Black, the indorser, was liable, in default of the maker ; and if he had received notice, may have paid it. We are to presume, that he would have paid it, in consideration of his legal liability, and out of regard to his credit. When the note was deposited for collection, it was for the purpose of being collected, from all who were liable upon it; and to omit giving notice of the disho-nour to the indorser, was neglecting a part of the obvious and legal means of collection. The understanding and usage of banks, every where, are conformable to this view of the subject. I consider, therefore, that where a bank takes a note for collection, it is bound to de- *85 ?nand payment of the maker, and to cause notice of non-payment to be given to all the indorsers, as on a note discounted.
It is next to be considered, whether the Bank is excused by the circumstances relied on, from its liability for this default. And first, of that ground of defence, which supposes the Bank excused, because it employed a notary, “ who is a public officer, and the bank is therefore not responsible for his ignorance or laches, unless his capacity •were notorious.” To what extent this ground might avail the defendant, if the subject of the controversy were a foreign bill of exchange, on which protest is necessary, will not now be considered, much less decided. The question here arises on a promissory note ; protest for non-payment is not necessary; it is altogether, superfluous; a demand of payment was necessary; and to enable it to be proved, it was necessary to employ some one to make it; but a notary was not requisite ; any other individual would have sufficed to malte the demand, or to make the enquiries necessary to giving notice. Supposing the notary employed here, for that purpose, which is not clear, he cannot be regarded as acting officially, and must be regarded as the mere agent of the bank, for whose omissions or mistakes, the bank is liable. As I have intimated, however, it is not clear, that there was any omission on the part of the notary, for it' seems that the demand of payment, if made at all, was made before the note was placed in the hands of the notary ; as also were the enquiries at the residence of Shannon, by the president Salmond, who enquired of McGee, his clerk, where the indorsers lived ; and as he .could give no information, “ the note was delivered to the bank notary, who protested it for non-payment, but no notice was given to the endorsers, they not being residents of Camden, and having no agent there.” Such is the language of the report, (I presume the evidence of Shannon himself,) and such is the language of the protest, which, a-s before remarked, is an admission of the notary, or bank agent, and therefore evidence against the bank. It is therefore not clear, whether the reason assigned for the protest, is to be attributed to the president, or to the notary. The president made the enquiries at Shannon’s, and receiving no information concerning the indorsers, gave the note to the notary, who protested it, without further enquiry con-eerning their residence, although Goodman, the maker, resided in the town, and the bank knew that Thompson, the plaintiff, was the owner of the note. If the reason assigned in the protest, be the ground assumed by the notary, as the agent of the bank, that, of it. self, would furnish sufficient evidence of his ignorance and in capacity to charge the hank;. But supposing otherwise, and that the presL *86 ¿lent and notary made enquiry of McGee concerning the indorsers, we are brought to the next ground of defence, that the bank, by making the inquiry of the immediate depositor used due diligence, and is not liable further.
There are two aspects, in which this part of the case may be presented ; as between indorsee and indorser, and as between principal and agent; and in both, the question would be, whether the bank has used reasonable diligence.
Suppose an action brought on the note by the bank as indorsee, against the plaintiff as indorser ; and the facts now relied on to excuse the bank, were relied on to dispense with notice, to wit: that the bank, on non-payment, had made application at the house of an intermediate indorser, or even of a person employed to negotiate the last indorsement, and by whose agency it had been passed to the bank. I think it could not be held sufficient to dispense with notice. What constitutes sufficient notice of the dishonor of a note or bill, is in general a question of law ; and yet what shall be deemed reasonable diligence, in ascertaining the residence of an indorser, in order to give notice, is a question of fact for the jury. The rules in relation to notice are very well settled, and generally understood. They are well stated by Mr. Justice Washington, in Williams vs. The Bank of the United States, 2 Peters, 96. “The holder of a bill or promissory note, in order to entitle himself to call upon the drawer or in-dorser, must give notice of its dishonor to the person whom he means to charge. But if, when the notice should be given, the party entitled to it be absent from the State, and has left no known agent to receive it; if he abscond, or has noplace of residence which reasonable diligence, used by the holder, can enable him to discover, the law dispenses with the necessity of giving regular notice.” And in Bateman vs. Joseph, 12 East Rep. 432, it was held, that whether a party used such reasonable diligence, to ascertain the residence of an in-dorser, was a question of fact to be left to the jury. That was an action by a subsequent indorsee against the drawee and first indorser of a bill of exchange, which became due on the 27th September, when it was presented for payment, to the acceptor . in London, and dishonored. Notice of the dishonor reached Manchester, where the plaintiff lived, on the 30th September, early enough to give notice to ■ the defendant on that day, by the post from Manchester to Liverpool, where the defendant lived ; and the plaintiff had like opportunities of giving notice on the 1st, 2d and 3d of October. But none was given until the 4th, when the defendant received it in a letter from the plaintiff, directed to Liverpool. At the trial, before Lord EJlenborough, *87 this apparent laches of the plaintiff, was accounted for by the evidence of his servant, that his master did not know the residence of the defendant, until the day when the notice was sent by the post. And his lordship left it to the jury to say, whether the plaintiff had used due diligence, in acquiring the knowledge of the defendant’s place of residence, admitting that otherwise the notice was too late. The jury having found a verdict for the plaintiff, on a motion for a new trial, it was agreed by all the court, that it was a question proper to be left to the jury, and they had decided it. “ Whether due notice has been given of the dishonor of a bill, all the circumstances necessary for the giving of such notice being known, is a question of law; but whether the holder have used due diligence to discover the place ef residence of the person to whom the notice is to be given, is a question of fact for the jury.”
If we consider the question as one between principal and agent, and discuss the degree of diligence, in reference to the duty undertaken to be performed, we shall come to the same conclusion, that it was one very proper for the decision of the jury. Whosoever undertakes an agency, engages likewise to employ an adequate degree of skill, and to use a reasonable degree of diligence. In this case, the bank engaged for the exercise of so much skill, in the particular ■department of business, as to perform the duly of collecting the note, and as I have endeavored to shew, of doing whatever was necessary to charge those, to whom the plaintiff might resort for payment; and in accomplishing this, that it would omit nothing, which reasonable diligence would enable it to perform. If it be said that it was the iault of the plaintiff, that the bank was not informed of the residence of the indorsers, it may be replied, that the bank must have known, when it took the note for collection, that a notice of dishonor might become necessary; and if the residence of the indorser was unknown, as the information was indispensable, to enable the bank to perform the duty, it was equally the duty of the bank to seek for and obtain it, at the time of receiving the note. And supposing both to be in fault, at the time of the dishonor of the note, it was surely incumbent on the hank to use all the means then in its power, to ascertain the residence of the indorser. It was submitted to the jury whether the bank had used reasonable diligence, in seeking that information, and the jury have decided against the bank, and a majority of the court thinks with good reason. The plaintiff was known as the owner, yet the note was taken from Shannon, without enquiry concerning l}im, or the previous indorser. A»4 after non-payment, no enquiry *88 was made of Goodman, the maker, and but one attempt to enquire of Shannon, although both lived in the same town.'
Smith, Attorney General, for motion.
J. L. Petigru, contra.
A majority of the court concurs entirely with the presiding judge, in his charge to the jury, and in all that is stated in his report, except when he thinks the bank did all it was bound todo; and when he doubts whether he should not have so charged the jury, as matter of law. He did well in leaving it to the jury. And the motion to sst aside their verdict is refused.
B. J. EARLE,'
We concur,
A. P. BUTLER,
JOHN B. O’NEALL,
HENRY W. DESAUSSURE,
J. S. RICHARDSON.-